Billy Eugene GIPSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–90–00783–CR.

Court of Appeals of Texas,
Dallas.

Sept. 18, 1991.

Allen Fishburn, Dallas, for appellant.

Carolyn Fitz–Gerald Levin, Dallas, for appellee.

Before ROWE, BAKER and WHITTINGTON, JJ.

## OPINION

BAKER, Justice.

Our Opinion of August 19, 1991, is withdrawn. The following is now our opinion.

The trial court convicted Billy Eugene Gipson of murder. The court assessed punishment at forty-five years' confinement. Gipson challenges the sufficiency of the evidence. He also complains the trial court erred by admitting testimony of his custodial confession. We conclude the evidence is sufficient to support the conviction, but the trial court erred in admitting his custodial confession. We reverse the trial court's judgment and remand for a new trial.

### THE OFFENSE

Both the manager and owner of a Dallas motel testified they heard noises coming from an unrented room in the motel. They went to the room and forced their way in. Gipson was one of two men in the room. He ran past the witnesses and left the premises. The other man handed the motel manager some money and left. A woman, who had earlier rented this room by the hour, was lying partly on the bed. She died four days later. The cause of death was manual strangulation.

Gipson later gave the police a statement. He admitted being in the room with his cousin and the woman. Gipson stated that he and his cousin robbed the woman. The cousin testified that Gipson beat and strangled the woman. The State indicted both men for murder.

## STANDARD OF REVIEW

In two points of error, Gipson contends the evidence is insufficient to corroborate the accomplice witness's testimony. He also contends the evidence is insufficient to prove he intentionally or knowingly caused the victim's death.

### 1. Corroboration of Accomplice Testimony

Gipson's cousin was an accomplice as a matter of law. *See Burns v. State*, 703 S.W.2d 649, 651 (Tex.Crim.App. 1985). A conviction cannot be had upon testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. The corroboration is not sufficient if it merely shows the commission of the offense. *See* TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979). When we test the sufficiency of the corroborating evidence, we do not consider the accomplice witness evidence. *Castaneda v. State*, 682 S.W.2d 535, 537 (Tex.Crim.App.1984). We examine all other evidence to ascertain whether it is of an incriminating character tending to connect the defendant with the commission of the offense. *Reed v. State*, 744 S.W.2d 112, 126 (Tex.Crim.App.1988); *Castaneda*, 682 S.W.2d at 537. If there is such evidence, the corroboration is sufficient. *Castaneda*, 682 S.W.2d at 537.

We must consider each case on its own facts and circumstances. *Reed*, 744 S.W.2d at 126. This evidence need not directly link the accused to the crime or be sufficient in itself to establish his guilt. *Reed*, 744 S.W.2d at 126. Proof that an accused was present at or near the scene of a crime, coupled with other suspicious circumstances, may connect the accused to the commission of the offense. Other suspicious circumstances may include subsequent flight. *Cruz v. State*, 690 S.W.2d 246, 250 (Tex.Crim.App.1985). The accused's statement can corroborate the accomplice witness testimony when the statement places the appellant with the co-defendant before, during, and after the murder of the victim. *See Romero v. State*, 716 S.W.2d 519, 523 (Tex.Crim.App.1986). However, evidence that merely shows the accused's opportunity to commit the crime is insufficient alone to corroborate the accomplice witness testimony. *Reed*, 744 S.W.2d at 127.

### 2. Culpable Mental State

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX.PENAL CODE ANN. § 19.02(a)(1) (Vernon 1989). A person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to engage in the conduct. TEX.PENAL CODE ANN. § 6.03(a) (Vernon 1974). Intent can be inferred from acts, words, and conduct of the accused. *Hernandez v. State*, 819 S.W.2d 806, 809–10 (Tex.Crim.App.1991). The trier of fact may infer intent to kill from any facts in evidence which, to his mind, prove the existence of the intent to kill. *Palafox v. State*, 484 S.W.2d 739, 743 (Tex.Crim.App.1972). A trier of fact can consider an accused's disregard for the victim as evidence of intent to kill. *See Cook v. State*, 388 S.W.2d 707, 709 (Tex.Crim.App.1965).

### 3. Sufficiency of the Evidence

When the sufficiency of the evidence is questioned, we view the evidence in the light most favorable to the verdict. We determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). The trier of fact is the sole judge of the weight and credibility of the witnesses. The trier of fact may believe or disbelieve any part of any witness's testimony. *Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App.1984). The trier of fact is not required to believe even uncontroverted testimony. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Crim.App. 1978).

## APPLICATION OF STANDARDS OF REVIEW TO FACTS

### 1. The Accomplice's Testimony

The cousin testified the victim was a prostitute. He said Gipson bought cocaine,

which Gipson and the woman smoked. The cousin had sex with the woman. He then went into the bathroom. When he returned, Gipson and the woman were struggling on the bed. The cousin testified Gipson was hitting the woman. She consented to have sex with Gipson if he would stop hitting her. Gipson held his hand on the woman's neck until she collapsed. Gipson placed the woman's torso on the bed and her legs on the floor. Gipson attempted to have sex with her. At this point, the hotel manager forced the door. Gipson rushed from the room.

### 2. The Corroborating Testimony

The motel manager testified he went to the room when he heard sounds of a struggle. Both the manager and the owner identified Gipson. They said he fled from the room immediately after the door opened. The manager testified the victim was seriously injured when they entered the room.

A paramedic sent to the scene testified he found the victim's torso on the bed with her feet on the floor. A pathologist testified the victim received blunt force injuries to her head. The pathologist said this was consistent with being hit with a fist. A friend saw Gipson and his cousin about one hour after the crime. The friend testified Gipson's right hand was swollen and puffy. Gipson told him that earlier in the day he hit a man.

■ After his arrest, Gipson gave the police a statement.[1] Gipson said he and the victim smoked "crack." Gipson said the victim, his cousin, and he were the only persons in the room.

### 3. Sufficiency of the Evidence

■ The evidence places Gipson with his cousin and the victim in the motel room before, during, and after the offense. *See Romero*, 716 S.W.2d at 523. Two indepen-

dent witnesses identified Gipson. Gipson fled the room when confronted by these witnesses. This evidence tends to connect Gipson to the offense. *See Cruz*, 690 S.W.2d at 250. We conclude the evidence is sufficient to corroborate the accomplice's testimony.

■ Gipson argues his attack on the woman was merely to force her to have sex with him. His cousin testified Gipson hit and choked the victim. Gipson put the victim on the bed and attempted to have sex with her. The pathologist testified the victim received blunt force injuries to her head consistent with being hit with a fist. The pathologist testified the cause of death was manual strangulation. The trier of fact could properly consider Gipson's acts and conduct as evidence of his intent to kill. We conclude the evidence is sufficient for any rational trier of fact to have found the essential elements of the crime. We overrule Gipson's first and second points of error.

### IMPROPER ADMISSION OF THE CONFESSION

In his third point of error, Gipson contends the trial court erred by admitting his confession. He maintains the confession was obtained by promises and coercion.

### 1. The Hearing on the Confession

The trial court held a hearing to determine whether Gipson voluntarily made the confession.[2] During cross-examination of the officer who took Gipson's confession, the following transpired:

Q. [DEFENSE ATTORNEY]: While you were taking it [confession], to be fair, of course, you told him [Gipson] it was going to be used against him or could be used against him in this trial?

A. [OFFICER]: Yes.

Q. Likewise, you told him it would be used in his favor?

---

1. Gipson challenges the admissibility of this extra-judicial statement. In reviewing the sufficiency of the evidence, we must consider all the evidence, whether properly or improperly admitted. *Deason v. State*, 786 S.W.2d 711, 716 (Tex.Crim.App.1990).

2. *See Jackson v. Denno*, 378 U.S. 368, 394, 84 S.Ct. 1774, 1790, 12 L.Ed.2d 908 (1964); Tex. Code Crim.Proc.Ann. art. 38.22(6) (Vernon 1979).

A. I told him it would be his story he could use in court.

Q. For or against him?

A. I just said it would be his story that he could tell in court.

Q. Wouldn't that imply that it could be used in his favor?

A. However you choose to use it.

Q. That he could use it on his behalf or the State could use it in their behalf, that's the impression you wanted to get across to him?

A. I told him it was a story he would be able to tell in court, yes, sir.

Q. That would imply that it could be used in his favor, doesn't it?

A. I'm saying he could imply that any way he wanted to.

Q. That was your intent, wasn't it, to get across to him that what he was saying here was his story and that he could use it on his behalf in his trial?

A. Yes, sir, I told him it would be presented to the Grand Jury and also presented in Court, just like he told it.

Q. Either on his behalf or against him?

A. Yes, sir.

Gipson's counsel objected to the admission of the confession on the ground it was involuntarily made because of the officer's inducement that the confession could be used in Gipson's favor.

### 2. Standard of Review

■ A written statement made by an accused as a result of custodial interrogation is not admissible as evidence against him in a criminal proceeding unless the statement strictly complies with article 38.-22(2)(a) of the Texas Code of Criminal Procedure. *See Dunn v. State*, 721 S.W.2d 325, 341 (Tex.Crim.App.1986); Tex.Code Crim.Proc.Ann. art. 38.22(2)(a) (Vernon 1979). A per se rule of inadmissibility applies if the evidence is uncontroverted that the officer told the accused that his confession could be used "for or against him." *Dunn*, 721 S.W.2d at 341; *Williams v. State*, 164 Tex.Crim. 347, 298 S.W.2d 590, 593 (App.1956). The basis for this rule is that telling an accused his confession may be used for him is an improper warning.

The confession is inadmissible as a matter of law. To warn the accused that his confession might be used for him holds out an inducement for making the confession. *Dunn*, 721 S.W.2d at 341.

## APPLICATION OF STANDARDS OF REVIEW TO FACTS

■ The record reflects:

Q. That was your intent, wasn't it, to get across to him that what he was saying here was his story and that he could use it on his behalf in his trial?

A. Yes, sir, I told him it would be presented to the Grand Jury and also presented in court, just like he told it.

Q. Either on his behalf or against him?

A. Yes, sir.

These facts are uncontroverted. Under these circumstances, the confession is inadmissible as a matter of law. *See Williams*, 298 S.W.2d at 593.

## HARM ANALYSIS

■ The State contends that if it was error to admit the confession, it was harmless. *See* Tex.R.App.P. 81(b)(2). The State contends the erroneous admission of this type of confession is subject to the harmless error rule. *See Connor v. State*, 773 S.W.2d 13, 16 (Tex.Crim.App.1989). More recently, the Court of Criminal Appeals applied a harmless error analysis to the erroneous admission of an induced confession. *See Sterling v. State*, 800 S.W.2d 513, 520 (Tex.Crim.App.1990). Both *Connor* and *Sterling* are distinguishable. The discussion of the harmless error rule in *Connor* is *dicta*. The *Sterling* facts show, in addition to the inadmissible confession, Sterling made a second admissible confession to another officer and a third oral confession to a fellow inmate. These circumstances distinguish both these cases from the matter before us.

We hold that *Dunn* applies. We sustain Gipson's third point of error.

We reverse the trial court's judgment and remand the cause for a new trial.